UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

ANTONIO DANIEL MCGHEE,

        Petitioner,

v.                                          Civil No. 4:14cv140
                                            Criminal No. 4:12cr10

UNITED STATES OF AMERICA,

        Respondent.

## OPINION and ORDER

This matter is before the Court on Antonio Daniel McGhee's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Petitioner's § 2255 Motion and associated memorandum advance four claims, all alleging ineffective assistance of counsel. After reviewing the written record, the Court finds that an evidentiary hearing is unnecessary because the Court's rulings do not turn on credibility determinations, and the record conclusively demonstrates that Petitioner is not entitled to any relief. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). For the reasons discussed below, Petitioner's § 2255 motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

In January of 2012, Petitioner and two co-conspirators committed an armed robbery and carjacking, resulting in the theft of several appliances from a delivery truck of a Sears

contractor. On February 8, 2012, a federal grand jury returned a multi-count indictment charging Petitioner and codefendant Gabriel Mitchell ("Mitchell") with: (1) Interference with Commerce by Robbery; (2) Carjacking; and (3) Brandishing a Firearm during a Crime of Violence. ECF No. 1. On April 5, 2012, a grand jury returned a multi-count superseding indictment which added a new Count, Conspiracy to Interfere with Commerce by Robbery, and added a new codefendant, Travis Williams ("Williams"). ECF No. 23. Following Williams' plea of guilty to the conspiracy count and firearm brandishing count, a second superseding indictment was returned charging Petitioner and Mitchell with the same four counts as the first superseding indictment. ECF No. 64.

Petitioner pled not guilty to the charges and proceeded to a joint jury trial with Mitchell. At trial, the evidence revealed that Anthony Wilson ("Wilson"), the delivery truck driver, was carjacked by two men. Unbeknownst to Wilson, his delivery helper (Williams) helped arrange the carjacking. Having received information from Williams, the two carjackers appeared at an appliance delivery location, displayed a firearm, bound Wilson and Williams (who was pretending to be a victim), and later off-loaded the appliances.

Petitioner testified in his own defense at trial, admitting his involvement in the <u>theft</u> of appliances, but disputing: (1)

2

that there was a gun present; and (2) that Wilson was a "victim" or that he was abducted, instead contending that Wilson was a willing participant in the theft.  See Trial Tr. 790-817, ECF No. 104.  At the conclusion of the jury trial, Petitioner was found guilty of all four counts.  ECF No. 87.  As to the firearm count, the jury concluded that Petitioner was responsible for "brandishing" the gun, thus triggering a seven-year mandatory minimum consecutive sentence.  ECF No. 87; 18 U.S.C. § 924(c).

Prior to the jury verdict being read in open Court, the undersigned judge noticed what appeared to be a "stray mark" on the special verdict form.  Specifically, the jury was instructed that if they found Petitioner guilty of the firearm count (Count 4), they should answer the following:

> With respect to Count 4, mark all that apply in regard to the firearm. During or in relation to a crime of violence the defendant:
> _____  Carried the firearm
> _____  Brandished the firearm

ECF No. 87.  The jury completed such form by making a clear and obvious checkmark on the "Brandished the firearm" line and making what appeared to be a partial "stray" mark, as contrasted with an affirmative selection, on the "Carried the firearm" line.  While the jury's clear finding that Petitioner brandished the firearm likely rendered their election on the lesser offense of carrying the firearm of little legal significance, to avoid

any confusion, the Court called counsel to a sidebar to discuss the stray/partial mark.   After showing counsel Petitioner's verdict form, and stating that the Court's belief was that the mark next to "Carried the firearm" was a stray mark, the Court proposed asking the foreperson to clarify the jury's finding, and defense counsel agreed to such procedure.   Trial Tr. 981-83, ECF No 103.   Upon inquiry, the foreperson confirmed that the mark was not an affirmative selection, and the foreperson then used "white-out" provided by the Court to make the verdict form clearly reflect the jury's unanimous finding.   Id. at 983-84. The jury was later polled, and each juror confirmed the unanimous verdict as read in open court.   Id. at 985.

Petitioner's counsel thereafter filed a written motion for judgment of acquittal raising several grounds, including the contention that the jury was confused by the verdict form as proven by their "hesitant" mark.   ECF No. 94, at 4-5.   After briefing was complete, the Court issued a written Opinion and Order denying such motion.   ECF No. 130.

Petitioner appealed his conviction, and the Fourth Circuit affirmed.   ECF No. 170.   Petitioner thereafter timely filed the instant § 2255 motion and memorandum in support advancing four claims of ineffective assistance, the first three challenging trial counsel's performance and the fourth challenging appellate counsel's performance.   ECF Nos. 183, 187.   The Government filed

4

a brief in opposition as well as an affidavit from Petitioner's trial counsel.[1]   ECF Nos. 190, 191, 194.   Petitioner filed two unsworn reply briefs, one responding to counsel's affidavit and the other responding to the Government's opposition brief.   ECF Nos. 195, 196.   This matter is therefore ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence."   28 U.S.C. § 2255(a).   To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack."   Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).   Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack

---

[1] Trial counsel submitted such affidavit only after being ordered to do so by the Court.

his sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

Although a petitioner advancing new claims asserted for the first time in a § 2255 motion must generally "clear a significantly higher hurdle than would exist on direct appeal," United States v. Frady, 456 U.S. 152, 166 (1981), a freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion, see United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06, (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005); see United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (quotation marks and citation omitted).

Satisfying the first prong of Strickland requires a petitioner to establish that counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. A petitioner's showing of deficient performance must therefore go beyond establishing that counsel's performance was below average, because "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As recently reiterated by the Fourth Circuit, the "basic lesson" of Strickland is not just deference but high deference, and attorneys are permitted to "be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014) (citations omitted).

The second prong of _Strickland_ requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." _Strickland_, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." _Id._ at 694. If a petitioner fails to prove either of the two prongs of the _Strickland_ test, the court need not evaluate the other prong. _United States v. Roane_, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

#### A. Ground One

Petitioner's first claim alleges that his trial counsel was ineffective for failing to explain the advantages of entering into an "open plea" without a plea agreement, admitting guilt to all four felonies charged in the second superseding indictment. The _undisputed_ facts clearly establish that defense counsel attempted to negotiate a plea deal with the Government that would involve a plea to less than all the charges, but that such negotiations were not successful. There is, however, a clear factual conflict between Petitioner's sworn § 2255 motion and his trial counsel's sworn affidavit regarding whether defense counsel advised Petitioner of the potential sentencing benefits of entering a plea of guilty _to all charges_. _Cf._ ECF No. 183,

at 4, ECF No. 190 ¶¶ 4-5. Notwithstanding such factual conflict, the Court finds that an evidentiary hearing is not necessary, because even if the Court assumes that Petitioner's version of events is true, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice.[2]

First considering <u>Strickland</u>'s performance prong, while Petitioner presents evidence in conflict with his lawyer's sworn statement that the two discussed the benefits and drawbacks of pleading guilty without a plea agreement, Petitioner does not challenge his lawyer's sworn assertions that: (1) Petitioner "maintained his innocence throughout the case"; and (2) Petitioner only indicated a willingness to even consider a guilty plea as trial drew near. ECF No. 190 ¶¶ 4, 6. Such facts are further supported by contemporaneous documentation demonstrating counsel's efforts to secure a favorable outcome. <u>See</u> Trial Tr. 5, ECF No. 106 (discussing counsel's efforts to have the Government drop federal prosecution in favor of state larceny charges); ECF No. 190 ¶ 6; ECF No. 194-1 (documenting defense counsel's efforts to negotiate a plea deal to only the conspiracy charge, which would have avoided the mandatory seven

---

[2] The undisputed record establishes that Petitioner's counsel explained the Guidelines benefit of a credit for acceptance of responsibility as well as the risk of an obstruction of justice enhancement if Petitioner chose to testify at trial. ECF No. 194-1, at 13. Petitioner's claim, therefore, is premised on the assertion that, even though he consistently protested his innocence to his lawyer, his lawyer should have advised him of his right to admit guilt to all charges.

year consecutive sentence on the firearm charge). Moreover, the undisputed fact that Petitioner, both outwardly to the Court and jury, and in confidence to his lawyer, <u>maintained his innocence</u> as to all four charges provides important context for analyzing counsel's performance. <u>See</u> ECF No. 190 ¶ 6 ("Mr. McGhee maintained his innocence throughout the case," but as the trial date approached, he expressed interest in "seeing if the government would offer him a plea agreement," which caused defense counsel to make additional efforts to <u>negotiate</u> a favorable plea deal); ECF No. 194-1, at 8 (Petitioner's own sworn affidavit executed <u>after he was convicted</u> indicating that "throughout many meetings with counsel I have denied all charges against me at the height that they were attributed to me but have always admitted to playing a lesser role of all charges," and that Petitioner "asked counsel to try and plea with the Government" only after his co-conspirator pled guilty); Trial Tr. 5, ECF No. 106 (Government's statement to the Court immediately prior to trial: "There have been no plea offers made by the United States in this case, Your Honor. Both defendants have indicated through their lawyers to me that they intended to proceed to trial from, at all stages.").

In addition to the above evidence, the record includes Petitioner's <u>sworn trial testimony</u>, during which he repeatedly and strenuously asserted, under oath, that while he did agree to

help steal appliances from the delivery truck, both the truck driver and the truck helper were part of the theft scheme, and thus, Petitioner did not commit a robbery or a carjacking, and he did not possess a gun.  Specifically, Petitioner testified as follows:

> . . . I did go along with it. But there was no robbery planning. From what my understanding is, we were supposed to just help them take the stuff off the truck and help them dump the stuff.

Trial Tr. 791, ECF No. 104 (emphasis added).

> And I want to say for the record, because this is the first time I ever got to speak throughout this whole situation since I've been locked up, I never once threatened this man. I didn't know this man until the day of. I never put a gun to him or anybody in my whole life.

Id. at 795 (emphasis added).

> Q:   Okay. And where was Mr. Wilson and Mr. Travis Williams in the Sears truck?
> A.   They were in the back.
> Q.   Okay. Had you or [Mitchell] handcuffed Mr. Wilson?
> A.   No.
> Q.   Did you duct tape him?
> A.   Everybody was at the free will. Nobody. No sir.
> Q.   Okay. Same with [Williams]? You didn't --
> A.   Yeah.
> Q.   -- tie him up or anything?
> A.   No.

Id. at 806-07.

> They was only in the back of the truck for a total of maybe 40 minutes. . . .  And they weren't bound. Everyone was at free will. Truth is, they elected. That wasn't part of the plan at all, to my knowledge. But they elected to be back there.

Id. at 809 (emphasis added).

Q. Do you understand or do you have any idea of what
[Williams] and Mr. Wilson are going to do as far as
explaining the lack of merchandise or items or
appliances on the Sears truck?

A. For real, I be lying if I said no, do you know what
I mean? And tell the truth. That's what's really got
me into all this, because <u>I knew they would have to --
like there is no other way to explain to your boss
that everything's missing and everything besides
saying that, yeah, you got robbed</u>. Do you know what I
mean? So I knew they would, I knew they would, if not
that day, eventually claim that. <u>But that's not what
actually happened. And that's why I'm willing to take
it to this point right now.</u>

<u>Id.</u> at 813 (emphasis added).

Q. Antonio, did you take any money from Mr. Wilson?
A. Unh-unh. Unh-unh.
Q. No?
A. Not at all.
Q. What about Gabriel? To your knowledge did Gabriel
take any money from Mr. Wilson?
A. <u>Nobody took anything from anyone. Nobody was beat
up. Nobody was handcuffed. Nobody was taped. Nobody
was forced to do this.</u> Man, I don't even know them two
guys, man. I met them for two minutes. And that's it.
Q. You did not hit, throw a punch at Mr. Wilson?
A. <u>No. No. When I first met him my first words was
"what's up." He said "what's up".</u>

<u>Id.</u> at 815 (emphasis added).

Q. You would agree with me that you agreed to steal
some items from the Sears truck, right?
A. All right...
Q. Answer my question now.
A. I'm going to say yes. But I didn't want to steal
them, no. Just -- to me, <u>I did, it is stealing, it is
stealing, okay? Do you know what? It is stealing. But
I just, my, my, to my part of the agreement was just
help them move the stuff off and let them handle the
rest. Let them steal it and do all that. But it is
stealing.</u> I can't lie. That is stealing.

Q. All right. <u>And you are telling these folks on the</u>
<u>jury here that you did not rob at gunpoint, or with</u>
<u>[Mitchell], Mr. Wilson?</u>
A. <u>No. Him or -- nobody had a gun man. Nobody had a</u>
<u>gun. Nobody had duct tape.</u> Nobody -- I don't know
where they got this duct tape, handcuffs from, man.
No. No. Unh-unh. We didn't -- no. No.

<u>Id.</u> at 816-17 (emphasis added). Even after his conviction,
Petitioner maintained his innocence as to the federal charges,
explaining in his sworn affidavit to the Fourth Circuit that his
criminal past proves that he would not progress from committing
petty crimes to committing "serious crimes (especially with
weapon)." ECF No. 194-1, at 8.

Considering the above, the Court finds no evidence in the
record that could support the conclusion that, based on the
facts and posture <u>of this specific case</u>, counsel's presumed
failure to discuss an "open plea" with Petitioner constituted an
error of constitutional dimensions. While the record evidence
demonstrates that Petitioner was, at least at one point in early
June of 2015, willing to consider <u>negotiating</u> a favorable plea
agreement in light of the fact that one of his co-conspirators
had pled guilty, this Court must avoid "the distorting effects
of hindsight," through "reconstruct[ing] the circumstances of
counsel's challenged conduct" and viewing the issue from
"counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at
689; <u>cf</u>. <u>Premo v. Moore</u>, 562 U.S. 115, 125 (2011) (labeling plea
negotiations "at least as nuanced as the art of trial advocacy,"

and explaining that when "determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel"). Reconstructing such facts based on <u>the evidentiary record of this case</u>[3] reveals that no reasonable lawyer would have believed that there was any possibility that Petitioner would admit guilt to four serious federal felonies that he repeatedly asserted he did not commit, to include a firearm charge that carried a mandatory seven year term of imprisonment.  To the contrary, Petitioner's own sworn statements reveal that he consistently maintained, both privately to his lawyer and publicly at trial and to the Fourth Circuit, that he was not guilty of the charged robbery, carjacking, and firearm offenses.[4]

Petitioner thus fails to demonstrate that he received constitutionally deficient representation.  Rather, "the record makes clear that Petitioner insisted on contesting" his guilt as

---

[3] The evidentiary record includes Petitioner's sworn statements in his § 2255 motion, the affidavits before the Court, and the trial transcript; it does not include unsworn facts asserted in Petitioner's § 2255 briefs. See <u>United States v. White</u>, 366 F.3d 291, 300, 302 (4th Cir. 2004) (holding that unsworn statements contained in a brief "do not constitute evidence" irrespective of whether it is the Government, or the petitioner, seeking to characterize such statements as evidence).

[4] Petitioner's claimed lack of understanding of his ability to admit guilt to all four charges is not only <u>unsworn</u>, but it is further undercut by the fact that Petitioner appeared in court for his initial appearance/ arraignment on the second superseding indictment <u>after</u> his co-conspirator had elected to plead guilty, yet he persisted in his plea of not-guilty to all charges at that time.  ECF No. 70.

to all the charges against him, including the firearm charge, which would "tend to show that he was not interested in pleading guilty at all, without a Government concession [of some kind] whether pursuant to a written plea agreement or 'straight up' as he [now] suggests." Bowens v. United States, No. 5:07cr50, 2015 WL 3882342, at *6 (W.D.N.C. June 16, 2015). Accordingly, in light of the case-specific facts, Petitioner fails to demonstrate that counsel's purported failure to discuss a plea of guilty to all charges was an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Alternatively, even if the Court assumes that defense counsel's performance was constitutionally deficient, Petitioner's hindsight assertion that he would have entered an "open plea" to all four felony counts in order to secure a sentencing benefit fails because: (1) first and foremost, it is unsworn; United States v. White, 366 F.3d 291, 300, 302 (4th Cir. 2004); see United States v. Rhodes, No. 3:08cr82, 2013 WL 150335, at *3 (E.D. Va. Jan. 14, 2013) (indicating that "unsworn allegations" contained in a petitioner's supplement to a § 2255 motion "cannot constitute a basis for habeas relief"); and (2) it contradicts undisputed portions of defense counsel's sworn

affidavit, and contemporaneous record _evidence_, relevant to Petitioner's interest in entering a plea.[5]

Petitioner's post-hoc, self-serving, and unsworn assertion that, if better informed, he would have entered an "open plea," is problematic for another reason: it does not squarely address the fact that, in order to enter such plea _and receive a credit for acceptance of responsibility_,[6] Petitioner would have had to admit guilt to an armed robbery and carjacking that he _swears he did not commit_. See _Missouri v. Frye_, 132 S. Ct. 1399, 1409, (2012) (discussing ineffective assistance at the plea stage in a

---

[5] Petitioner's newly advanced assertion that he would have freely admitted guilt to four felonies that he swears he did not commit in exchange for a sentencing concession must be considered in light of the potential benefit of such a plea. Even if Petitioner received the full 3-level credit for acceptance of responsibility, and no perjury enhancement, it appears that his advisory Guideline range would have been 84-105 months imprisonment (25/IV), _plus seven (7) consecutive years_ on the firearm brandishing count. Accordingly, an "open plea" would have yielded an advisory "low-end" sentence of 14 years imprisonment. In contrast, after proceeding to trial, the advisory low-end sentence was 135 months, plus 84 months – approximately 18 years. This four year difference is also impacted by the 2-level enhancement for obstruction of justice that resulted from _Petitioner's decision_ to take the stand and testify falsely to the jury. But for Petitioner's obstruction, the difference between the "open plea" Guideline range and "post-trial" Guideline range is only approximately two years at the low-end. Such calculations illuminate the comparatively minimal risk shouldered by Petitioner in pursuing an acquittal _as to all charges_ at trial.

[6] An "Alford Plea," or a plea of nolo contendere, also do not appear to be viable avenues to plead to all charges and still secure a sentencing benefit. First, a defendant may only enter a plea of nolo contendere with the consent of the Court, and this Court would not have accepted such a plea in a case involving a carjacking at gunpoint. See _United States v. Dorman_, 496 F.2d 438, 440 (4th Cir. 1974). Second, even if an Alford plea or nolo contendere plea was accepted, such a plea would not involve an admission of guilt, and based on the nature of the charges and the case-specific record, would almost certainly have resulted in Petitioner receiving _no credit_ for acceptance of responsibility. See _United States v. Tunstall_, 155 F.3d 563 (4th Cir. 1998) (unpublished table opinion).

different context, but noting that to show prejudice, a
defendant must show a "reasonable probability the plea <u>would
have been entered</u>" and that the trial court would have accepted
it). Contrary to Petitioner's arguments in his memo, this case
appears similar to <u>Rosado v. United States</u>, No. 1:10cr11, 2015
WL 3485031 (M.D.N.C. June 2, 2015), where the district court
rejected the § 2255 petitioner's contention that he would have
accepted an "open plea" if counsel had explained that option,
because the record "establishes that Petitioner chose to go to
trial not because of any errant advice about his sentencing
prospects, but rather because he wanted to pursue an acquittal."
<u>Id.</u> at *4.

     In sum, this Court does not need to resolve a credibility
dispute in order to decide Petitioner's first § 2255 claim.
Rather, even assuming that Petitioner's version of events
regarding counsel's lack of advice is accurate, Petitioner's
claim fails in light of his unwavering position, a position that
extended beyond his conviction, that he <u>is not-guilty</u> of all
four federal felonies charged against him.[7]   Moreover, even if

---

[7] This Court's view of the record is effectively captured by the opinion
of another judge of this Court denying a § 2255 motion, which stated:
          There is nothing to indicate that counsel failed to adequately
     represent Petitioner's interests at any point during the
     underlying proceedings.   As best the Court can discern,
     Petitioner now has buyer's remorse regarding [the jury's
     verdict] and ultimate sentence.   As Judge Wilkinson recently
     remarked, "buyer's remorse should not be dressed in the garb
     of an ineffective assistance of counsel claim."   <u>United States</u>

trial counsel's performance was constitutionally deficient, Petitioner's own sworn statements reveal the absence of Strickland prejudice, instead demonstrating that: (1) Petitioner made the voluntary decision to proceed to trial in an effort to prove his innocence through advancing a theory that, if successful, would likely have led to acquittals on all charges; and (2) even at this late stage in the proceedings, Petitioner still has not admitted that he is guilty of carjacking, robbery, or use of a firearm, and he therefore fails to demonstrate a reasonable probability that he would have admitted his guilt and been entitled to a credit for acceptance of responsibility.[8]

---

v. Jackson, No. 12-6756, 2014 WL 486673, at *9 (4th Cir. Feb. 7, 2014) (Wilkinson, J., dissenting).

Addy v. United States, No. 1:13cr57, 2014 WL 1088833, at *5 (E.D. Va. Mar. 19, 2014). While Addy involved a petitioner who challenged his sentence after pleading guilty, a post-trial attack on counsel's decision not to explore/encourage a guilty plea as to all charges is merely the opposite side of the same coin. See Jackson, 2014 WL 486673, at *9 (Wilkinson, J., dissenting)(explaining that "had the lawyer persuaded his client to go to trial, and a poor outcome ensued, we would have another ineffective assistance of counsel claim before us" and such "darned-if-you-do/darned-if-you-don't situation is one in which ineffective [assistance] claims are the least justifiable").

[8] The Court has considered the Third Circuit's opinion in United States v. Booth, 432 F.3d 542 (3d. Cir. 2005), which remanded a § 2255 case to the district court for an evidentiary hearing with respect to the claim that trial counsel was ineffective for failing to discuss an open plea. The instant facts are distinguishable from Booth in several ways, including: (1) here, Petitioner had a plausible defense (as contrasted with the "overwhelming evidence" of guilt in Booth); (2) here, Petitioner denied his guilt throughout the entire case, including post-conviction (as contrasted with Booth admitting his guilt to several friends who testified against him at trial); (3) here, a plea to all four charges would have involved a seven-year consecutive mandatory minimum (as contrasted with no apparent statutory enhancement in Booth had the defendant pled guilty to both charges rather than pleading to only the more serious charge offered by the Government during plea negotiations); and (4) here, Petitioner wanted to prove his innocence at trial and did not want to cooperate with

Petitioner having had the benefit of a full and constitutionally adequate representation, in-line with <u>Petitioner's consistent position</u> that he participated in a property crime, not an armed robbery, his ineffective assistance claim lacks merit, and it is therefore **DENIED**.

### B. Ground Two

Petitioner's next ground for relief alleges that his counsel was ineffective both for failing to: (1) object to misleading language in the special verdict form; and (2) object to the Court's proposed procedure of confirming with the jury in open court that a "stray mark" on the verdict form was unintentional. For the reasons discussed below, both subparts of Petitioner's second claim are denied.

First, as to the wording on the special verdict form, Petitioner fails to demonstrate deficient performance or resulting prejudice. As discussed above, the verdict form

the Government (as contrasted with Booth's singular desire not to cooperate with the Government acting as the "deal-breaker" during plea negotiations). <u>See</u> <u>United States v. Gonzalez-Rivera</u>, 217 F. App'x 166, 170 (3d Cir. 2007) (distinguishing <u>Booth</u> in part based on the fact that the defendant before the court "maintained his innocence throughout these proceedings"); <u>Arzola v. United States</u>, No. CIV.A. 12-3888 SDW, 2014 WL 3894258, at *6 (D.N.J. Aug. 8, 2014), <u>cert. of appealability denied</u> (May 29, 2015) ("District courts in this Circuit have followed <u>Gonzalez-Rivera</u> and denied evidentiary hearings when (1) the petitioner claimed his or her attorney never informed him or her about an open plea, (2) the petitioner maintained his or her innocence throughout the proceedings, and (3) the record belied the contention that the petitioner would have accepted a plea deal."); <u>United States v. Ontiveros</u>, No. CR S-02-418, 2010 WL 445041, at *9 (E.D. Cal. Feb. 2, 2010), <u>R&R adopted,</u> No. CRS02-0418GEBGGHP, 2010 WL 1239305 (E.D. Cal. Mar. 26, 2010), <u>aff'd sub nom.</u> <u>United States v. Ontiveras</u>, 487 F. App'x 387 (9th Cir. 2012) ("The instant case differs from <u>Booth</u> in that here, movant was unwilling to enter any plea agreement with the government because he was unwilling to admit any guilt.").

stated that the jury should "check all that apply" and such language was followed by options indicating that Petitioner "Carried the firearm" and/or "Brandished the firearm." Without evidence or a developed argument, Petitioner asserts that "both factors could not apply to a single co-Defendant in any event." ECF No. 187, at 5. Such unsupported assertion, however, appears inaccurate, as the jury surely could have found that Petitioner both carried and brandished the same firearm during the same robbery. Petitioner, of course, would not have been punished twice if both options were checked by the jury, but rather, the jury's brandishing finding would act to increase the mandatory minimum sentence from five years to seven years. Petitioner's motion, therefore, does not establish that counsel's failure to challenge the verdict form was erroneous in any way.

Petitioner likewise fails to demonstrate resulting prejudice, because while there may have been some confusion regarding whether the jury concluded that Petitioner carried a firearm, the jury clearly and unanimously made the aggravated finding that he brandished a firearm. Moreover, the fact that the jury found Petitioner guilty of brandishing a firearm, but only found his trial codefendant guilty of "possessing" a firearm, further demonstrates that the jury understood the difference, weighed the evidence, and made their findings. <u>Cf.</u> ECF Nos. 87, 90. Petitioner's claim therefore fails.

Second, Petitioner's associated claim that his counsel provided deficient performance by failing to object when the Court proposed asking the jury about the perceived "stray mark" on Petitioner's verdict form fails to satisfy either prong of Strickland. Petitioner asserts that counsel should have insisted that the jury be sent back to the jury room for further deliberations; however, he fails to demonstrate that such procedure was the only reasonable way to handle the situation. Contrary to Petitioner's claims, the Court did not ask the jury to "deliberate" in open court, but instead, merely asked for clarification of what, if anything, was intended by the mark the jury had already placed on the verdict form.[9] The Court's question was aimed at enhancing the clarity of the record,[10] and

---

[9] The cases cited by Petitioner involving scenarios where a Court instructs a jury to resume deliberations to resolve the jury's confusion over its own verdict, or to resolve a facially inconsistent or erroneous verdict, are distinguishable. See Hafner v. Brown, 983 F.2d 570, 574 (4th Cir. 1992); United States v. Rastelli, 870 F.2d 822, 835 (2d Cir. 1989). Unlike such cases, here, there was not an inconsistent or erroneous verdict, but rather, the Court asked a clarifying question on the record to ensure that the Court was properly interpreting the jury's written findings. Moreover, the cited cases do not stand for the proposition that a Court is barred from asking the jury a clarifying question in open court; rather, they hold that it was proper to order further deliberations when faced with the case-specific issues that were before those courts. Based on the case-specific issue in this matter, and the foreperson's response to the Court's inquiry (as later confirmed by a jury poll), there was simply no reason for the Court to order further deliberations.

[10] After the Court made its inquiry, the foreperson confirmed that the mark was inadvertent rather than an affirmative indication of the jury's verdict. Trial Tr. 983-84, ECF No 103. Such representation was made by the foreperson in front of the entire jury panel, and it was likewise clear to all jurors that the foreperson was then asked by the Court to use "white-out" to erase the mark.

on collateral review, the Court fails to recognize any deficiencies in defense counsel's handling of this matter.

Petitioner's challenge to the clarification procedure also fails to demonstrate prejudice as required by Strickland's second prong. To the extent Petitioner asserts that he was improperly sentenced to a seven-year mandatory minimum, such sentence was based on the jury's very clear "checkmark" on the verdict form indicating that the jury unanimously concluded that Petitioner was responsible for brandishing a firearm. Petitioner fails to demonstrate that the purported lack of clarity regarding whether the jury also checked the "carried the firearm" line has any bearing on the validity of the clear and unanimous aggravated finding that Petitioner brandished the gun. Moreover, the lack of prejudice is further demonstrated by the fact that after the Court asked the clarifying question and the jury panel heard the foreperson's response, defense counsel asked that each juror be polled in open court to ensure that they agreed with the verdict. Trial Tr. at 985, ECF No 103. Each juror responded that they agreed with the verdict as read in open court. Id. Additionally, defense counsel later argued, in a written Rule 29 motion, that the verdict should be set aside for various reasons, including jury confusion. ECF No. 94. While such motion was unsuccessful, Petitioner fails to demonstrate a reasonable probability that any other procedure

23

(such as ordering additional deliberations) would have produced a different outcome.   For these reasons, Petitioner's claim is **DENIED**.

### C. Ground Three

Petitioner's third ground for relief contends that counsel was ineffective for failing to explain the "mens rea" elements of the offenses and failing to explain any potential affirmative defenses.   Having carefully reviewed Petitioner's motion, memorandum in support, reply memorandum, and memorandum in response to trial counsel's affidavit, Petitioner's third claim remains somewhat unclear, although it is apparent that Petitioner fails to satisfy either prong of Strickland.   First, to the extent Petitioner asserts that he was misled by his counsel into believing that one or more of the charges had a lesser included offense of "larceny," it appears that Petitioner may be conflating a lesser-included offense, with a defense and/or a failure of proof.   Cf. ECF No. 194-1, at 7.   While it is true that the jury did not have the option of convicting Petitioner of "larceny," the instructions of law given by the Court would have required the jury to acquit Petitioner of all four counts if they believed Petitioner's testimony asserting that the alleged "victim" of the crimes was actually a co-conspirator in a theft disguised as a robbery.   Stated differently, while there was no "lesser included offense," of

larceny, proving that only a larceny was committed would have been a complete defense to the four federal charges. Accordingly, Petitioner fails to demonstrate that his counsel provided incorrect advice, or otherwise performed deficiently, in advancing a trial defense based on larceny.

Similarly, Petitioner's motion is less than clear regarding how he was uninformed, or misinformed, about the mens rea elements of the charges against him.[11] Petitioner's own sworn statements to the Fourth Circuit indicate that he had many pretrial meetings with his counsel, and Petitioner's unsworn response to his trial counsel's affidavit indicates that his lawyer "did explain [the] charges to [him] but the elements were definitely not understood." ECF No. 195. Even accepting Petitioner's unsworn response as true, it is unclear how counsel is alleged to have failed if Petitioner did not ask for clarification from his lawyer at the time counsel was explaining matters to him. Additionally, Petitioner does not contest his lawyer's sworn statement that they "reviewed and discussed at length the expected government evidence and how it related to

---

[11] For example, Petitioner's § 2255 memorandum broadly asserts that his counsel was ineffective for failing to discuss the mens rea elements and for failing to "discuss any potential affirmative defenses . . . which could have negated the mens rea elements of the charged offenses, or in the alternative could have affected the movant's decision to have plead guilty, instead of going to trial." ECF No. 187, at 7. Petitioner, however, fails to identify a single affirmative defense that had some potential applicability in this case, nor does he explain how any applicable mens rea standard could have impacted his case or plea decision.

the elements of the offenses," to include "the strengths and weaknesses of the expected evidence and what [the defense] could do to counter the evidence."   ECF No. 190, at 4.   Petitioner also does not dispute his lawyer's sworn assertions regarding the fact that there were not facts supporting the pursuit of any true "affirmative defenses," such as entrapment or duress.   Id. Petitioner's vague assertions therefore fall short of demonstrating how counsel's alleged failures had any bearing on Petitioner's decision to plead guilty.

Having reviewed the entirety of Petitioner's briefing on this issue, the Court finds that he fails to demonstrate deficient performance or resulting prejudice.   The trial record reveals a clear and plausible defense strategy, and Petitioner opted to testify in direct support of such strategy.   While the strategy proved unsuccessful, Petitioner fails to present any evidence or argument that suggests a constitutional deficiency in counsel's performance and/or advice.   Moreover, even if such a deficiency is presumed, Petitioner fails to demonstrate resulting prejudice as his broad and conclusory assertions that he was confused as to the mens rea elements and/or any possible affirmative defenses fails to demonstrate a reasonable probability of a different outcome.   Cf. Dyess, 730 F.3d at 359 (indicating that "vague and conclusory allegations . . . may be

disposed of without further investigation"). Petitioner's third ground is therefore **DENIED**.

### D. Ground Four

Petitioner's fourth ground for relief largely tracks his second ground (failure to challenge the jury verdict form and/or the Court's clarification procedure); however, Petitioner's fourth ground is directed at appellate counsel rather than trial counsel. For the same reasons discussed above in Part III.B, ground four fails.

First, Petitioner fails to demonstrate deficient performance on appeal because he fails to establish that the "ignored issues are clearly stronger than those presented." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008) (quotation marks and citation omitted); see Smith v. Murray, 477 U.S. 527, 536 (1986) (indicating that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy") (internal quotation marks and citation omitted). Second, Petitioner fails to satisfy Strickland's prejudice prong because he fails to demonstrate that an appellate challenge to the verdict form, or the jury's alleged confusion filling out such form, would have led to a different outcome on appeal. Lawrence, 517 F.3d at 709. To the contrary, this Court already denied a similar

argument based on "alleged jury confusion" in response to defense counsel's post-trial Rule 29 motion.   ECF No 130, at 13-16.   Additionally, on appeal, Petitioner filed a pro se supplemental brief with the Fourth Circuit asserting that his seven-year consecutive sentence on the firearm count was imposed in violation of the Supreme Court's then recent decision in Alleyne v. United States, 133 S. Ct. 2151 (2013).   Petitioner argued in support of such claim that this Court "improperly" asked the jurors questions about the verdict form in open court and that it should have instead "simply submitted another verdict form to the jurors."   ECF No. 194-1, at 4.   The Fourth Circuit squarely addressed Petitioner's pro se claim as follows: "Because the jury specifically found that McGhee brandished a firearm, McGhee's reliance on the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), lacks merit." United States v. McGhee, 542 F. App'x 231, 233 (4th Cir. 2013). Petitioner's fourth ground for relief is therefore denied as Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice.

## IV. CONCLUSION

For the reasons discussed above, each of Petitioner's ineffective assistance of counsel claims are **DENIED** on the merits.   Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," as to any

claim in his § 2255 motion, a certificate of appealability is **DENIED**. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>see</u> R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a).

Petitioner is **ADVISED** that, because this Court has **DENIED** a certificate of appealability with respect to his § 2255 motion, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Opinion and Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

_____ /s/ ~~~~~
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 20 , 2016